UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARRELL HEINER,

    Plaintiff,

    v.

SKAGIT COUNTY EMERGENCY
MEDICAL SERVICES COMMISSION,

    Defendant.

Case No. C08-1016RSL

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant Skagit County Emergency Medical Services Commission (the "Commission"). Plaintiff, a former Commission employee, contends that the Commission retaliated against him by discharging him after he made certain statements as an alleged whistle blower. The Commission counters that most of plaintiff's claims are barred because an administrative law judge, who conducted a hearing, concluded that many of the actions about which plaintiff complains did not constitute retaliation.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

For the reasons set forth below, the Court grants defendant's motion.

## II. DISCUSSION

**A.  Background Facts.**

In January 2003, the Skagit County Board of Commissioners formed the Commission, a municipal corporation, to develop and implement a plan for providing emergency medical services to residents of the county. The Commission is comprised of volunteers who represent many of the interests involved in providing emergency medical services. The Commission also has a paid staff, which included an executive director and plaintiff, among others. Plaintiff worked as an accountant for the Commission; he performed the Commission's fiscal and accounting functions.

On March 10, 2006 and March 13, 2006, plaintiff sent e-mails to the Skagit County Auditor's office and the State Auditor's office, respectively, questioning the way the county awarded contracts to emergency services providers. Specifically, plaintiff contends that a local ordinance required service providers to negotiate with the Commission. Instead, service providers were being permitted to bypass the Commission and negotiate directly with the county. At the time, the Commission had determined that direct negotiations were permissible. Declaration of Shane Sanderson, (Dkt. #29-3) ("Sanderson Decl.") at ¶ 7. The State Auditor ultimately declined to find that the direct negotiations were improper, describing the issue as an "administrative matter." Reply Declaration of Eric Roy, (Dkt. #29) ("Roy Reply Decl."), Ex. 8.

On April 20, 2006, the Skagit County Fire Commissioner's Association, an elected body of representatives from various fire districts and commissions, held a regular

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

meeting. The agenda for the meeting included a consultant's presentation regarding an upcoming levy. Plaintiff requested and was granted an opportunity to speak at the meeting. He introduced himself as the accountant for the Commission and "expressed the opinion that, as the auditor for the EMS Commission, he was in the best position to understand the actual costs and financial issues surrounding the levy and the distribution of levy funds." Declaration of Earl Klinefelter, (Dkt. #11) ("Klinefelter Decl."), Ex. 5 (the "ALJ's Order"). He further "suggested that some of the participants in recent negotiations were not being entirely truthful in providing financial information regarding their costs and expenses and that, as a result, the EMS Commission was not getting accurate information." Id. at p. 9. Several people in attendance at the meeting perceived his presentation in a very negative light, describing it as "inappropriate" and a "rant." Id., Ex. 2 (an attendee explained that while plaintiff spoke for twenty-five minutes, he was "pacing and his voice was very tight and broke on several occasions"). The Fire Chief of the Anacortes Fire Department believed that plaintiff had called him a "liar" during his remarks. Id. Members of the executive board were concerned the plaintiff's statements could reflect poorly on the Commission, inflame existing tensions among stakeholders, and be perceived erroneously as having been made on the Commission's behalf. The Anacortes Fire Chief subsequently demanded an apology from the Commission, and it issued a written apology.

Around May 1, 2006, the Commissioner's executive director, Jodi Monroe, resigned her position and entered into a settlement agreement with the Commission. Shortly after Monroe's departure, plaintiff wrote a published letter to the editor of the

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

Skagit Valley Herold stating that Monroe was the "best boss [he] had ever had." First Declaration of Eric Roy, (Dkt. #12) ("First Roy Decl."), Ex. 5.

On June 13, 2006, the human resources committee of the Commission met with plaintiff to discuss expectations regarding employee performance and behavior and to discuss plaintiff's behavior at the April 20 meeting. Members of the executive board were concerned that plaintiff's behavior at the meeting was unprofessional and reflected poorly on the Commission, particularly during sensitive levy negotiations. Plaintiff was told not to claim or imply that he represented the Commission in public media or other venues. On June 16, plaintiff wrote a letter to every member the Commission "regarding executive board abuse," claiming that he had been slandered and accusing board member Steve Abel of using his position to further his own interests. The same day, plaintiff sent a letter to the City of Mount Vernon seeking to file a complaint against Abel for slander. The City of Mount Vernon found that his complaint had no merit and did not warrant further action. After receiving that letter, plaintiff sent a letter back asserting that the investigation had been a "sham." ALJ Order at p. 18.

In July 2006, the Commission informed plaintiff that a summary of the June 13, 2006 counseling session would be placed in his personnel file with a written reprimand. The written reprimand stated that it was being provided pursuant to Section 11 of the EMS Personnel Policies – "Employee Conduct and Discipline." The Commission determined that plaintiff's actions at the April 20 meeting and his "unsubstantiated allegations" regarding Chief Abel's role in plaintiff's private personnel matter constituted poor public relations and offensive conduct toward a colleague in violation of the

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

personnel policies.  The Commission also determined that plaintiff's use of Commission resources (a Commission envelope) in sending his complaint to the City of Mount Vernon, then denying that he had done so, violated the policy regarding acts of dishonesty.  The Commission also believed that plaintiff's subsequent actions were insubordinate; in the June 13 meeting, the Commission had prohibited him from engaging in conduct that failed to reflect tact, discretion and courtesy with co-workers.  Plaintiff agreed to "returning to work and maintaining tactful, professional communications and working professionally and cooperatively with all Commission members."  Klinefelter Decl., Ex. 1.  The reprimand stated, "Any further violations of this nature may result in termination of your employment."  Id.

Plaintiff filed a whistle blower retaliation complaint with the Commission on July 30, 2006 based on the written reprimand.  On the eve of the hearing, plaintiff sent anonymous letters to members of the Commission's board stating that the Commission's executive board was "setting up the commission for a major liability," and threatening litigation over his slander allegation.  Klinefelter Decl., Ex. 7; Heiner Dep. at pp. 59-60, 62.  Plaintiff has since admitted that he sent the letters.  On November 15 and 16, 2006, an administrative law judge held a hearing on plaintiff's complaint.  The ALJ found that plaintiff "did not assert, nor was there any evidence to support an assertion, that the EMS Commission or any of its employees engaged in retaliation against [him] based upon the March 10, 2006 e-mail."  ALJ Order at p. 7.  The ALJ's final order concluded, "The evidence presented at the hearing did not establish that the written reprimand and Performance Improvement Plan dated July 17, 2006 was motivated by an attempt to

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 5

retaliate against Mr. Heiner for any perceived whistle blower conduct." ALJ Order at p. 20. The order further stated,

> Mr. Heiner has not established by a preponderance of the evidence that the [Commission], or its employees, took retaliatory action against Mr. Heiner for making a good faith report to an appropriate person of an alleged improper governmental action. As set out in the Findings of Fact, the actions taken by the HR Committee were based upon the EMS Commission's determination that Mr. Heiner's conduct violated the EMS Commission's personnel polices.

ALJ Order at p. 22.

The Commissioner terminated plaintiff's employment effective December 15, 2006. The termination letter stated four reasons for plaintiff's discharge: (1) the ALJ had upheld the previously-issued written reprimand, and plaintiff had violated the terms of the written reprimand again by sending anonymous, threatening letters to the Commissioners just before his hearing, (2) plaintiff had been using the term CPA, in violation of the State Board of Accountancy, (3) plaintiff's work performance had been compromised by his ongoing dissatisfaction with the board, and (4) due to a reallocation of job duties, plaintiff's position was being eliminated.

Plaintiff asserts a claim for a violation of 42 U.S.C. § 1983 based on an alleged violation of his First Amendment rights. He also claims that the Commission retaliated against him, discharged him in violation of public policy, and defamed him.

**B.  Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C.     Analysis.**

   **1.     Retaliation Claims.**

Plaintiff claims that defendant retaliated against him in violation of two state statutes. First, RCW 42.41 *et seq.* protects local government employees who make good faith reports to appropriate governmental bodies and provides remedies for individuals who are subjected to retaliation for having made such reports. "Improper government action" does not include employee grievances or complaints. RCW 42.41.020(b). Second, RCW 49.60.210 serves two functions: it prohibits retaliation against whistle blowers as defined in RCW 42.40, and it prohibits retaliation against people who oppose

discrimination. Plaintiff claims that he was discharged for complaining that the Commission failed to follow the ordinance and for supporting Monroe's claim of gender discrimination.

The parties dispute whether the ALJ's findings are entitled to preclusive effect. The preclusive effect of a state administrative decision in a federal civil rights action should be determined under the law of the forum state. University of Tenn. v. Elliott, 478 U.S. 788 (1986). In Washington, an administrative determination of fact is entitled to collateral estoppel effect in a subsequent civil suit. Shoemaker v. City of Bremerton, 109 Wn.2d 504, 505 (1987). In this case, the elements of collateral estoppel have been met. There was a final judgment on the merits, the parties are the same, the issue was within the ALJ's expertise, there were sufficient procedural safeguards in place, and application of the doctrine would not work an injustice on plaintiff. Moreover, the issue is the same: whether the discipline imposed on plaintiff was motivated by retaliation. Therefore, the Court will give preclusive effect to the ALJ's findings of fact and conclusion that the discipline was not motivated by retaliation. However, because the ALJ did not decide whether plaintiff's *discharge* was motivated by retaliation or by his opposition to discriminatory practices, the Court considers those issues for the first time.

To prove a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there was a causal link between the employee's activity and the employer's adverse action. See, e.g., Francom v. Costco Wholesale Corp., 98 Wn. App. 845, 861-62 (2000). Once plaintiff proves his prima facie case, defendant must show that it took the adverse

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 8

action for non-retaliatory reasons, then plaintiff has the burden of proving that those reasons are a pretext for a retaliatory motive. Milligan v. Thompson, 110 Wn. App. 628, 638 (2002). When the "'record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination has occurred,' then summary judgment may be granted." Id. at 636 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).

In this case, the ALJ determined that the Commission's discipline of plaintiff was not motivated by retaliation. Plaintiff's discharge was simply further discipline based mostly on the same conduct. In the interim, plaintiff had engaged in additional misconduct, in violation of the letter of reprimand, by sending the anonymous, unprofessional and threatening letters to members of the Commission. The threatening and personal nature of the letters undermines an argument that they were they "good faith reports" under the whistle blowing statute. By the time plaintiff sent his letters to the members of the Commission, they were already well aware of his contentions. The fact that plaintiff had made a whistle blower complaint did not permit him to disregard the Commission's personnel policies or to repeatedly raise the same issues in an unprofessional and threatening manner. See, e.g., Selberg v. United Pac. Ins. Co., 45 Wn. App. 469, 472 (1986) ("When the employee's conduct in protest of an unlawful employment practice so interferes with his job performance that it renders him ineffectual in the position for which he was employed, such conduct is not protected by the statute.").

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9

Furthermore, defendant has offered non-retaliatory reasons for plaintiff's discharge. Defendant has offered ample evidence that plaintiff's performance and attitude deteriorated in the months before his discharge and he was inattentive to matters other than his own complaint. First Roy Decl., Ex. 7 (e-mail showing that plaintiff ignored a request for information for approximately six weeks, then when pressed, replied that it was one of Monroe's duties that had not yet been "reassigned"); (in another e-mail, explaining that he would correct an error and stating that he was "a bit distracted lately with my upcoming hearing"); Klinefelter Dep. at pp. 104-05 (explaining that plaintiff did not have a good attitude towards the executive board; describing an incident when plaintiff gave him a new proposed budget that had not yet been approved by the finance committee minutes before the board met to adopt the next year's budget). The deterioration of plaintiff's performance alone justifies his discharge.

In support of his allegation of pretext, plaintiff provides only speculation. Although Monroe stated that plaintiff was a good employee, she ended her employment before the performance problems came to a head. Monroe also expressed a belief that after plaintiff's comments at the April 20 meeting, the Commission started to look for ways to discharge him. Monroe Dep. at pp. 41-45. Monroe, however, was not involved in the discharge decision, and her testimony about the motives of others is speculation. When pressed for specifics, Monroe testified that she was pressured to reprimand plaintiff for his actions. Id. at p. 44. However, the ALJ ruled that the discipline was not retaliation. The Commission's administrative assistant, Eric Boehm, testified during his deposition that he believed that plaintiff was discharged for supporting Monroe and for

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 10

his statements about the ordinance. However, Boehm admitted that he never heard members of the Commission make such statements. Boehm Dep. at p. 39. He was not involved in the discharge decision, and his speculation does not show pretext.

The Commission also discharged plaintiff because his position was eliminated. The Commission did not fill the position for a while, then hired a bookkeeper to "fill in." Boehm Dep. at p. 81. Although plaintiff argues that the Commission eventually hired another accountant, that vague assertion does not show that the position was not, in fact, eliminated during the relevant time. Plaintiff also claims pretext because he was discharged for allegedly misrepresenting himself as a CPA, when in fact Monroe knew when she hired him that plaintiff had let his license lapse. However, since his hire, (1) plaintiff continued to purport to be a CPA, and (2) the Washington Board of Accountancy informed the Commission by letter that plaintiff's misrepresentation of his CPA status in his cover letter and resume to the Commission could subject him to an investigation and/or sanctions. The Commission believed that plaintiff's actions reflected poorly on the Commission. Therefore, plaintiff has not shown that the Commission's proffered reasons for the discharge were pretextual, and his claim under RCW 49.60.210 fails. Plaintiff's claim under the whistle blower statute duplicates his whistle blower claim under RCW 49.60.210 and fails for the same reasons.

Plaintiff also contends that he was discharged in retaliation for his support for Monroe. However, "support" for an unpopular employee is not a basis for a retaliation claim. Rather, plaintiff must show that he opposed unlawful discrimination. RCW 49.60.210. In this case, plaintiff has provided no evidence that he opposed discrimination

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 11

or supported Monroe's discrimination claim. In fact, plaintiff was unaware that Monroe was claiming gender discrimination until after she had ended her employment and settled her claim. Heiner Dep. at pp. 114-15. Nor did he ever witness any discrimination against her. Id. at p. 113. Plaintiff's letter to the Skagit Valley Herald never referred to discrimination and instead touted Monroe as a good employer. Accordingly, the Court grants defendant's motion for summary judgment regarding plaintiff's retaliation claim.[1]

### 2. Wrongful Discharge in Violation of Public Policy.

In Washington, an employee can assert a cause of action for wrongful discharge if the employer contravenes a clear mandate of public policy. Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 232 (1984). Plaintiff contends that the Commission violated the public policy of Washington by discharging him for whistle blowing and for exercising his statutory right to request a hearing regarding that claim. The first issue duplicates his whistle blowing claim and fails for the same reasons.

As for the second issue, plaintiff cannot show that requesting the hearing caused his dismissal. Plaintiff cites portions of the deposition of Earl Klinefelter, the Manager of the Commission, in which he suggested that plaintiff's request for an administrative hearing was a factor in his discharge.

> Q: So was the fact that he chose not to let the issue go and elected to pursue an administrative complaint was [sic] part of the reason for why – they decided to let him go?
> A: That was a portion of it, as well as his – really his inability, I think, just to let go

---

[1] Even if plaintiff could show that he opposed discrimination, his claim would fail because the Commission has demonstrated legitimate, non-discriminatory reasons for discharging him, as set forth above.

> of how he was being dealt with by members of the board, and specifically, Chief Able.
> Q: Well, didn't he have the right under law to request an administrative hearing, if he wasn't happy with the way he was being treated?
> A: He had that right. Everybody does.
> Q: Okay. But you just said that the Commission – that was part of the basis for the termination was that he exercised that right?
> A: That and a long history of other things that happened prior to that, yes. And I'm talking about the disciplinary letter that he received and subsequent counseling on that.

Klinefelter Dep. at p. 85. The cited testimony is ambiguous because Klinefelter was responding to a compound question and seemed focused on plaintiff's inability to let the issue go. He also confirmed that plaintiff had a right to request an administrator hearing. Klinefelter later clarified that plaintiff's participation in the hearing was not a basis for his dismissal. Id. at pp. 88-89, 105. Klinefelter's explanation of his earlier equivocal testimony does not require a jury trial. See, e.g., State Farm Auto. Ins. Co. v. Treciak, 117 Wn. App. 402, 409 (2003) (explaining that "when equivocal statements are further explained in later testimony, [courts] review those statements along with all the evidence presented to see if there is an issue of fact for the jury"). Other members of the Commission confirmed that the hearing played no role in plaintiff's termination. Sanderson Decl. at ¶¶ 9, 13; Declaration of Donna McCabe, (Dkt. #29-3) at ¶ 9; Declaration of Mary James, (Dkt. #29-3) at ¶ 9. In fact, plaintiff confirmed that he did not believe that his pursuit of an administrative hearing caused his termination. Heiner Dep. at pp. 54-55, 73. Instead, the Commission has shown that plaintiff was discharged for the legitimate reasons set forth above. Because the Commission has shown "an overriding justification for the dismissal," plaintiff's wrongful termination claim fails.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 13

Blinka v. Washington State Bar Ass'n, 109 Wn. App. 575, 584 (2001).

### 3. First Amendment/Section 1983 Claim.

Plaintiff contends that the Commission violated his First Amendment right to freedom of speech by discharging him based on his comments at the April 20, 2006 meeting. It is difficult to discern from plaintiff's filings what he actually said at that meeting and what he is claiming to be protected speech. Plaintiff did not file a declaration. His memorandum contains only vague and general summaries of what he may have said, without any citations to the record. It appears that plaintiff's allegedly protected speech includes accusing the Anacortes Fire Chief of providing the Commission with inaccurate financial information and stating "that the EMS Commission ordinance was not being followed and that service providers were going around the Commission and the Executive Director and negotiating directly with the County, which undercut the purpose of the Ordinance." Plaintiff's Response at p. 6; id. at p. 20. The Court will analyze whether that speech is protected.

The Supreme Court recently explained that not all speech by government employees is protected. Public employees "often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." Garcetti v. Ceballos, 547 U.S. 410, 419 (2006). For that reason, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" Id. at 420 (quoting Connick v. Myers, 461 U.S. 138, 154 (1983)).

To determine whether plaintiff's speech was protected, the Court must first

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 14

determine "whether the employee spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418. If not, then the employee has no First Amendment claim. If so, then the Court must determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Id. Regarding the April 20, 2006 meeting, the ALJ found that plaintiff introduced himself as the accountant for the EMS Commission and purported to have expertise based on his work. ALJ Order at p. 9. Plaintiff argues that he was not paid to attend the meeting, but as an exempt employee, he has not shown or even argued that he would otherwise have received additional pay. Moreover, the focus of the inquiry is on whether plaintiff's statements "were made pursuant to his job duties." Garcetti, 547 U.S. at 421. Plaintiff was undisputedly responsible for reviewing financial information and opining on it. His comments about the accuracy of the financial information being provided to the Commission fall squarely within his those job responsibilities. Furthermore, according to his written job description, plaintiff was responsible for serving as a financial advisor to the Commission, evaluating financial information, and "mak[ing] related presentations to the Executive Board, Commission and committees, and represent the Commission at finance-related events." Reply Roy Decl., Ex. 9. Plaintiff does not dispute that his position included those tasks. Plaintiff's job was broad enough to include attending the meeting and making comments during the same. In fact, plaintiff had the opportunity to speak at the meeting solely because of his position; there was no public comment. That fact distinguishes this case from those that involved other types of public speech, such as letters to a newspaper, that were not made pursuant to an

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 15

individual's job duties. See, e.g., Pickering v. Board of Educ., 391 U.S. 563 (1968). Because plaintiff's speech was made pursuant to his job duties, it was not protected, which dooms his First Amendment claim.

Even if plaintiff had been speaking as a private citizen, his claim would nevertheless fail because the Commission had a greater interest in prohibiting plaintiff from impugning the integrity of its members and engaging in an emotional diatribe than it would have in limiting similar speech from a member of the public. Garcetti, 547 U.S. at 421. The Commission was designed to serve a common goal, so its staff was directed not to take sides among its constituents, who had competing interests. Klinefelter Decl., Ex. 9 at § 18. Plaintiff publicly impugned the honesty of a Commission member in a manner that made it appear as if he were speaking on behalf of the Commission. In fact, the Fire Chief demanded an apology from the Commission. Plaintiff's "rant" also impacted the Commission's goal of conducting successful levy negotiations among the competing service providers. Plaintiff made his comments in an emotionally-charged environment, in which the Commission was paying a consultant to diffuse tensions and broker a deal between competing emergency services providers. Against that backdrop, plaintiff's emotional diatribe undermined the Commission's efforts. Accordingly, the Commission's interests outweighed plaintiff's. For those reasons, the Court grants defendant's motion for summary judgment on plaintiff's First Amendment claim.

**4. Defamation.**

Plaintiff claims that the Commission defamed him in two ways. First, plaintiff contends that several commission members stated that plaintiff called the Anacortes Fire

Chief a "liar" at the April 20 meeting. However, truth is a defense to a defamation claim. See, e.g., Mark v. Seattle Times, 96 Wn.2d 473, 494 (1981). A defendant in a defamation case "need not prove the literal truth of every claimed defamatory statement." Id. Rather, he or she "need only show that the statement is substantially true or that the gist of the story, the portion that carries the 'sting,' is true." Id. Although plaintiff denies calling the Fire Chief a liar, the ALJ found that a "reasonable person attending the [April 20] meeting would have understood Mr. Heiner's statements to mean that the representatives of Anacortes were being dishonest in the process of negotiating contracts." ALJ Order at p. 14. Because the gist of the statement was true, the alleged "liar" statements cannot support a defamation claim.

Second, plaintiff contends that Timothy Kiehl referred to plaintiff as a "nut case" in an e-mail message. Kiehl was a consultant hired by the county, not the Commission, to assist the county in making recommendations on how to distribute levy funds among various emergency services providers. Plaintiff has not shown how the Commission can be held liable for Kiehl's statement. Accordingly, defendant's motion for summary judgment on plaintiff's defamation claim is granted.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. #10). The Clerk of the Court is directed to enter judgment in

favor of defendant and against plaintiff.

DATED this 31st day of August, 2009.

_____
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 18